IN THE COURT OF APPEALS OF TENNESSEE
AT
May 19, 2004 Session

## MARY JEAN UPRIGHT v. RICHARD UPRIGHT

**A Direct Appeal from the General Sessions Court for McNairy County**
**No. 7216      The Honorable Bob Gray, Judge**

_____

**No. W2003-01834-COA-R3-CV - Filed July 27, 2004**

_____

Husband appeals trial court's final decree of divorce pertaining to division of marital property.  We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the General Sessions Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

C. timothy Crocker and Michael A. Carter of Milan for Appellant, Richard Upright

WM Ken Seaton of Selmer for Appellee, Mary Jean Upright

### OPINION

Richard Upright ("Husband" or "Appellant") and Mary Jean Upright ("Wife" or "Appellee") were married on August 9, 1980.      On December 27, 2001, Wife filed a complaint for divorce against Husband, alleging as grounds the existence of irreconcilable differences or, alternatively, inappropriate marital conduct.  Wife's complaint sought an equitable division of the parties' marital property.

Husband filed an answer and counter-complaint for divorce on April 12, 2002, admitting that the parties "should be divorced on the grounds of irreconcilable differences if the parties are able to enter into a written, signed and notarized Marital Dissolution Agreement."  Husband denied Wife's allegations of inappropriate marital conduct and sought dismissal of her complaint for divorce.  In his counter-complaint for divorce, Husband petitioned the court to award an absolute divorce in his favor on grounds of irreconcilable differences or, alternatively, inappropriate marital conduct.  Husband further prayed for an equitable division of the parties' marital property.  A hearing on the complaint for divorce, answer, and counter-complaint was held on December 2, 2002.

The record reflects the following:  During the course of their marriage, the parties lived in a home located on three acres in McNairy County, Tennessee.  Wife owned the home and the lot upon which it was situated prior to the parties' marriage.  Wife entered the marriage as the owner of a trailer located on the marital residence property and a "house-full of furniture."  The record indicates that Husband brought very little separate property into the marriage.

Husband testified that the marital residence was in "very poor" condition when he took up residence with Wife in 1980.[1]  The parties agree that Husband performed some repairs on the marital residence, but disagree as to the extent and value of said repairs.  Wife testified that Husband put up some paneling and sheet rock in the marital residence, and further noted that some parts of the home improved during the marriage, and some didn't.  Husband contends that he completely rebuilt the kitchen and a bathroom in the marital residence using money from the parties' joint checking account.  Wife testified that Husband merely placed some tile in the bathroom, and noted that a family friend built new cabinets for the kitchen at no cost to the parties.  Wife maintains that no money from the joint account was used to repair, rebuild, or renovate the marital home.

Husband was the primary wage earner throughout the marriage.  Wife contributed as a homemaker, caring for her children and Husband's children from a previous relationship.  Husband testified that he deposited his salary into a joint checking account that was used to pay for family expenses, income and real estate taxes, and insurance on the marital residence and trailers.  Wife testified that both parties contributed to the joint checking account, and noted that she rarely wrote checks on this account.  Wife further denies that Husband used personal funds or money from the joint checking account to pay for routine maintenance costs on the marital residence or trailers.  Husband did not introduce any physical or documentary evidence to support his contention that he used personal funds or money from the joint checking account to pay for general maintenance repairs to the marital residence and/or trailers, but insists that he was unable to produce such evidence because his records and/or receipts are locked up in the marital residence and are therefore not accessible to him.  Husband testified that he had "no way of knowing how much [he] spent" on improvements and materials purchased for improvements to the marital residence prior to 1984.

In 1984, a fire damaged the inside of the marital residence.  The parties received an insurance payment of $52,000.00 for the damages sustained.  Using the proceeds from the insurance payment, the parties, with the help of friends and relatives, made repairs to the marital residence, including the installation of a central air conditioning and heating system.  Husband testified that he personally repaired the roof, reworked the frame of the house, and installed new beams under the structure.  The parties further renovated the garage to include two bedrooms, a bathroom, and a closet.  Wife maintains that the repairs were never finished.  The parties used the remaining proceeds to purchase second-hand furniture for the dwelling, a van, and a mobile home trailer and lot located across the street from the marital residence, and to pay for a vacation.

---

[1] Husband approximated the value of the marital residence and Wife's trailer in 1980 as $15,000.00.

During the course of the marriage, the parties purchased three mobile homes or trailers. The parties purchased one trailer for $3,000.00, and borrowed $2,800.00 from Wife's mother to purchase a second trailer. The parties later repaid Wife's mother with money from the insurance payment. From the record, it appears as though both of these trailers are located on the same tract of property as the marital residence and the trailer owned by Wife prior to the parties' marriage. In the late 1980's, the parties purchased a tract of land across the street from their marital residence and another trailer for a total price of $6,000.00. At some point during their marriage, the parties purchased a house and the property upon which it was located from Wife's grandmother for $1,000.00, a price that Wife testified was far less than the value of the real property.

Both parties testified that they rented the trailers to tenants throughout their marriage. Wife continues to rent these trailers, and testified that she earns a total of approximately $750.00 per month in rental income from these trailers. Wife further noted that Husband collected most of the rent during the marriage. Husband calculated Wife's current total monthly income from the rentals at $790.00, and testified that he has not received any money from these rentals since the parties' separation.

In addition to the repairs performed on the marital residence, Husband contends that he spent nine months completely rebuilding and/or repairing the trailer owned by Wife prior to the parties' marriage. Wife acknowledged that Husband made repairs to the trailer, but noted that Husband did not complete the repairs and that she had to eventually hire someone to finish the work.[2] Wife further offered unrefuted testimony that Husband cut and sold timber from the tract of land where the three trailers are located and kept all of the proceeds from the sale.

Both parties are disabled and have a limited income. Wife, who was in her mid-sixties at the time of this appeal, testified that she receives $548.00 per month in Social Security disability in addition to the rental income from the trailers. Husband, also in his mid-sixties, receives $1,079.00 per month in social security disability and $438.00 per month in military disability. Husband also receives quarterly stock dividends on 1,396 shares of Kansas City Power and Light stock that he holds as separate property.

By final decree entered January 30, 2003, the trial court, *inter alia*, awarded the parties an absolute divorce on the stipulated grounds of inappropriate marital conduct and divided the parties' marital property as follows:

> 3. As an equitable division of property the Court finds that all real property is marital by purchase or transmutation. Wife is awarded the marital home and 3 acres, including all mobile homes

---

[2] Wife testified that Husband spent nine months placing four pieces of paneling, repairing the ceiling in one bedroom, installing a new tub in the bathroom, and placing linoleum in the kitchen and bathroom.

located thereon and the house and lot purchased from Wife's mother.[3] The lot and house trailers purchased in the late 1980's shall be sold and the net proceeds divided equally between the parties;

4. Husband is awarded all of his tools, equipment, guns, the 1952 Ford tractor, the John Deere 240 tractor, the bushhog, the box blade, the 16 ft. trailer, the lawnmower, the 1993 Lincoln, the Ford F-150 and all items included on his "Additional Personal Property" and "Separate Property of Husband" lists, a copy of both of which is hereby attached and made a part of this Decree;[4]

5. Wife is awarded the remaining property in her possession, including the 1991 Toyota van and the household goods and furnishings and any house trailers she owned prior to the marriage;

6. The Edward Jones Account is to be divided equally between the parties;[5]

7. Husband is ordered to pay Wife the sum of Two Thousand Dollars ($2,000), representing funds he withdrew from the Bank.

Husband filed a timely motion to alter or amend the trial court's final decree of divorce in February 2003, stating in pertinent part:

1. The Court failed to follow the provisions of T.C.A. § 36-4-121 and make an equitable division of the parties' marital property.

2. Defendant respectfully requests that the Court make appropriate adjustments in the division of marital property so that same is equitable and conforms with T.C.A. § 36-4-121.

---

[3] We find no evidence in the record to indicate that the parties purchased a house or lot from Wife's mother, and therefore conclude that the trial court's final decree should be read to award Wife "the house and lot purchased from Wife's **grandmother**." (emphasis added).

[4] The documents entitled "Additional Personal Property" or "Separate Property of Husband" were not included in the record as attachments to the trial court's final decree of divorce. These documents were included in the record on appeal as part of Trial Exhibit 7. A brief sampling of the property awarded to Husband as separate property includes 1,396 shares of Kansas City Power and Light stock valued by Wife at $34,000.00, clothing, toiletries, the family dog, a Kawasaki three-wheeler, furniture and file cabinets, a computer and accessories, and two rings.

[5] The parties' Edward Jones Account was valued at $22,005.67 as of November 29, 2002.

-4-

Upon subsequent denial of his motion, Husband filed a notice of appeal of the trial court's final decree on July 17, 2003. On appeal, Husband presents for review the sole issue of whether the trial court erred in its division of the parties' marital property.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

On appeal, the Husband specifically asks this Court to order a sale of all of the real property and divide the proceeds from the sale equally between the parties. Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. ***Bookout v. Bookout***, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. ***Id***. A trial court is afforded wide discretion when dividing the marital property, and its distribution will be given "great weight" on appeal. ***Ford v. Ford***, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997). Guidelines for the equitable division of marital property are set forth in T.C.A. § 36-4-121©) (Supp. 2002). That statute provides, in relevant part:

> (c) In making equitable division of marital property, the court shall consider all relevant factors including:
>
> (1) The duration of the marriage;
>
> (2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;
>
> (3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;
>
> (4) The relative ability of each party for future acquisitions of capital assets and income;
>
> (5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

T.C.A. § 36-4-121(c).

To briefly reiterate, the trial court's award of marital property to Wife included, *inter alia*, the marital residence and three acres, the three trailers located on this property, including the trailer that Wife owned prior to the marriage, and the house and lot purchased from Wife's grandmother. Husband and Wife both received a one-half interest in the sale proceeds from the trailer and lot purchased in the late 1980's. The trial court's order states "[t]he lot and house trailers purchased in the late 1980's shall be sold and the net proceeds divided equally between the parties;" however, the record appears to identify only one lot and mobile home trailer as having been purchased during this time period. It is this court's understanding that the lot and mobile home trailer ordered to be sold is the real property located across the street from the marital residence.

Neither the court's final decree of divorce nor the trial judge's statements from the bench at the December 2, 2002 hearing explicitly assign a value to the individual pieces of real property or indicate whether the court properly considered the factors set forth in T.C.A. § 36-4-121©). We note, moreover, that the trial court specifically determined that "all real property [owned by the parties] is marital by purchase or transmutation." The trial court nonetheless awarded a bulk of the real property to Wife.[6]

Under the particular circumstances of this case, and in consideration of the factors prescribed in T.C.A. § 36-4-121©), we find the trial court's division of marital property to be equitable. We

---

[6] Wife does not dispute or appeal the trial court's classification of the real property involved in this matter as marital property.

note, initially, that Husband specifically appeals the trial court's award of real property. The primary discrepancy between the court's award and Husband's proposed division lies in appellant's valuation of the marital residence, the three acre tract of land, the trailers, and the house and lot purchased from Wife's grandmother. In a "Statement of Assets and Proposed Disposition [of the] Marital Estate," entered as an exhibit at trial, Husband values the marital residence, the three acre tract of land, and the trailer owned by Wife prior to the marriage at $103,000.00. Husband's valuation is based strictly upon his assertion that the aforementioned real property is currently insured for approximately $104,000.00 and therefore must necessarily be worth as much. The evidence in the record, however, indicates that the marital residence, the three acres, and the trailer owned by Wife prior to the marriage was appraised for property tax purposes by Mr. Stanley Mitchell, McNairy County Trustee, at a value of $30,400.00 for the tax year 2001.

Husband's exhibit further values the two remaining mobile home trailers located on the three acre tract of property at $3,500.00 each. It is apparent that neither of these trailers was appraised at a value exceeding $1,100.00 for the tax year 2001. Husband further valued the house and lot that the parties purchased from Wife's grandmother at approximately $2,500.00. Although it is unclear from the record the precise value of this real property, it is evident that the house and lot did not appraise for more than $1,100.00 for the 2001 tax year.[7]

In light of this evidence, we find the difference between Husband and Wife's calculated total awards of marital property to be significantly less than that indicated by the appellant in his exhibit and on appeal.

Applying the factors set forth in T.C.A. § 36-4-121©), we note that this was a marriage approximately twenty-three years in duration. The evidence in the record indicates that Husband was the primary earner and that his salary was placed in a joint checking account to which both parties had access. Although Wife apparently did not earn or contribute financially to the degree of Husband, she acted as a homemaker and the family caretaker throughout the course of the marriage.

The record further indicates that Wife was the unencumbered owner of the marital residence, three acres, and her mobile home trailer at the time of the parties' marriage. Husband brought very little separate property into the marriage. Although Husband helped pay taxes and insurance on the aforementioned property, he made no mortgage or rental payments on the property. We note, moreover, that the parties agree that Husband performed various repairs on the marital residence and the trailer that Wife owned prior to the marriage. However, the extent and value of these repairs, and the specific question of whether Husband used funds from the joint account to pay for such repairs, is in dispute.

---

[7] A copy of property tax notices for the parties' properties located at 163 Hill Lane ($30,400.00), 191 Hill Road ($1,000.00), 185 Hill Road ($800.00), and Hill Lane ($1,100.00) was included in the record on appeal. The number in parenthesis next to the address represents the respective property's appraisal value for the tax year 2001.

The trial court's finding that "all real property is marital by purchase or transmutation" indicates that the trial court considered Husband's contribution to the maintenance of the marital residence and Wife's trailer and the purchase of the remaining three trailers and the house and tract of land from Wife's grandmother.

We note that both parties are disabled and currently drawing social security. Husband receives approximately $969.00 more in social security payments per month, and earns or receives additional income in the form of stock dividends. Wife's only source of income aside from social security benefits is the money that she earns as rent on the trailers.

As a final note, counsel for Wife, for the first time at oral argument, asked for an award of attorney's fees based upon Husband's filing of an allegedly frivolous appeal. We deny this request.

For the foregoing reasons, we affirm the trial court's final decree of divorce in all respects. Costs of this appeal are assessed against the appellant, Richard Upright, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.